## Commonwealth v. Lingenfelter

*George W. Griffith*, for Commonwealth.

*E. J. Harkins*, of *Scanlan & Harkins*, for defendant.

McKenrick, J., October 3, 1938.—The information charges that defendant "did wilfully and maliciously drive a lumber truck . . . over highway route no. 11025, traffic route no. 218, in Croyle Township, and did then and there interfere with the work of the Pennsylvania State Highway Department, by destroying the work that had been already accomplished. This being contrary to the Act of May 9, 1929, P. L. 1702, and the laws of the Commonwealth."

The Act of May 9, 1929, P. L. 1702, is entitled:

"An Act regulating the closing of public highways and providing for the locating, marking and maintenance of detours necessitated by such closing; requiring boroughs, cities and towns to notify the Department of Highways of the creation and discontinuance of certain detours; providing penalties for removing, destroying, defacing signs erected for warning or detour purposes, and for driving on, over or across highways which are closed by the proper persons or authorities, except in certain cases".

Section 1 of the act provides that, "except in the case of emergencies wherein the safety of the public would be

endangered, no public road or highway in this Commonwealth shall be closed to vehicular traffic, except upon order of the authorities having charge of the maintenance of such highways, nor for a longer period than is necessary for the purpose for which such order is issued".

Section 2 provides for the creation of a detour where borough, town, or city streets, forming parts or sections of a State Highway, are closed to vehicular traffic.

Section 3 provides that "When any public road or highway shall be closed, as hereinbefore provided, it shall be the duty of the authorities authorizing the closing to immediately designate or lay out a detour, on which they shall erect or cause to be erected and maintained while such detour is in use legible signs . . . It shall also be the duty of the authorities closing the main highway and maintaining the detour to immediately remove all detour signs when the highway originally closed is opened for traffic. . . .

"Section 4. Any person who shall wilfully remove, deface, destroy or disregard any barricade, light, danger sign, detour sign, or warning of any other character whatsoever, erected or placed under authority of this act, or who shall drive on, over or across any highway which has been closed by proper authority, shall, upon conviction thereof in a summary proceeding before a magistrate . . . be sentenced to pay a fine of . . . Provided, however, That persons who have no outlet due to the closing of a highway may drive on, over or across such highway, with the consent in writing of, and subject to such conditions as may be prescribed by, the authorities responsible for the closing or their agents or contractors, without being subject to the penalties imposed by this section."

Section 5 provides for the recovery of damages from any person or persons who have damaged the highway by driving on, over, or across the same when it is closed to vehicular traffic, in accordance with the provisions of this act.

The testimony here discloses that the employes of the Highway Department were oiling the road in question and a flagman was stationed to warn traffic. Defendant was driving a truck and was stopped and told to wait and not drive again for 15 minutes. According to the testimony of some of the Commonwealth's witnesses, defendant, after waiting for some time, proceeded to drive upon a part of the highway which was being oiled. The flagman who first stopped defendant testified: "He stayed there until they had so much chip down and then I told him to go ahead, to watch his step, that they were putting down a special oil and to do what Larimer told him." And further, "I told him to go ahead and pull on through and in case Mr. Larimer stopped him just to do like anybody else, to stop and watch the oil." And further, "I just told him to go through and watch the oil and that it was up to him to do what Mr. Larimer wanted him to do."

Defendant testified that he stopped, as requested, and waited for some time and that "the fellow that flagged me down told me to go ahead." Defendant further testified that he followed State Highway trucks employed on the road and that he did not drive on the oiled part of the road.

The testimony is rather conflicting as to whether defendant drove on the oiled portion of the road, or whether he drove to the side of the road. We, however, are not concerned so much with the conduct of defendant on the day in question, but rather as to whether the act of assembly invoked in this prosecution covers the offense charged. As we read the act, and it is the only one to which we have been referred as supporting the Commonwealth's contention, it is an act governing cases in which detours have been laid out and signs erected concerning said detours. The title of the act, which we have quoted in part, relates to the closing of public highways and for the locating, marking, and maintaining of detours necessitated by such closing. The penalties provided in the act are to be imposed where one wilfully removes, defaces,

destroys, or disregards any barricade, light, danger sign, detour sign, or warning of any other character whatsoever, erected or placed under authority of this act, or who shall drive on, over, or across any highway which has been closed by proper authority. There is no contention here that the road was closed, as roads are closed by the Highway Department, or when detours have been provided. There is no detour provided in this case. It was simply a temporary use of the road by the Highway Department for the purpose of making certain repairs, and the persons permitted to drive thereon were stopped at intervals for periods of 15 minutes or more.

While it is true that section 4 makes it an offense to disregard any warning, it will be noted that the warning is "erected or placed under authority of this act," and the act is clearly an act regulating the closing of public roads and the laying out of detours. The purpose which the legislature had in mind, as indicated by the title to the act and sections 1, 2, and 3 thereof, makes it clearly an act relating to the relocating, marking, and maintenance of detours necessitated by the closing of a road. In other words, the act is designed to cover cases in which a road is being repaired and, by reason of such repairs, a detour is created and a person disregarding the notice of detour has driven upon the closed highway.

In the proviso of section 4, persons who have no outlet due to the closing of the highway may drive on, over, or across such highway subject to certain conditions, that is, persons would not be able to use the detour provided and, therefore, they may, without being subject to the penalties provided, use the road which is in process of construction or repair.

In a criminal prosecution, which this is, there must be some statutory authority for the prosecution, and where a particular act of assembly is invoked the court must determine the purport of the act and the circumstances arising which would bring defendant's conduct within the act invoked. We are not indicating by what

we say here that defendant's conduct meets with our approval, but his failure to coöperate with the highway employes, if he did so fail, in order to make their work easier and that the road might sooner be opened to general traffic, does not necessarily make him guilty of an offense which the act in question was designed to punish.

It will be noted that in the title to the act is the following:

" . . . providing penalties for removing, destroying, defacing signs erected for warning or detour purposes, and for driving on, over or across highways which are closed by the proper persons or authorities". We take it that the latter part of the section of the title which is quoted refers to the driving over highways which have been closed when detours have been provided for the traveling public. The act of assembly must be taken in its entirety, having in mind the purpose for which it was passed, and we cannot pick out isolated clauses and attempt to bring a defendant within the prohibition of the general act relating to the establishment of detours when roads are closed by the proper authorities.

The legislature clearly could provide for the occasions when temporary repairs are being made and impose penalties for disregarding warnings or signs calling attention to the work in progress. It may be that the Highway Department, which is interested in this proceeding, has relied upon section 4 of the act to warrant the present proceedings, and we have no fault to find with the public officers who have instituted this prosecution. On the other hand, a defendant, who is charged with an offense which subjects him to a fine and possible imprisonment, has the right to stand upon the act of assembly, and if he is not brought within its purview, to appeal to the courts for an interpretation of the law.

In this case counsel for defendant has contended that the act hitherto invoked is not applicable to the circumstances of the present case, that the road in question was not closed within the meaning of the act, so as to make

travel on said road unlawful. Any doubt is to be resolved in favor of defendant and before defendant may be convicted he must be adjudged guilty beyond a reasonable doubt, not only concerning the commission of the acts alleged to constitute an offense, but of the law which prohibits the conduct in question.

We have tried to analyze in detail the act which has been cited as supporting the prosecution and are of the opinion that it does not apply to the particular offense alleged and proven in this case. No other act of assembly has been called to our attention and we, therefore, determine that defendant did not violate the act upon which the prosecution is founded. We, therefore, adjudge him not guilty and direct that the county pay the costs.